UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN F.,<br><br>                              Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>                              Defendant. | Case No.:  20-cv-2201-BAS-DEB<br><br>**REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[DKT. NOS. 14, 19]** |

This Report and Recommendation is submitted to United States District Judge Cynthia A. Bashant pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1.c.

**I.      INTRODUCTION**

Plaintiff Susan F. seeks review of the Commissioner of Social Security's denial of disability benefits. Dkt. No. 1. The parties filed Cross-Motions for Summary Judgment, and Plaintiff filed a Reply. Dkt. Nos. 14, 19, 20. For the reasons set forth below, the Court recommends DENYING Plaintiff's Motion for Summary Judgment and GRANTING Defendant's Motion for Summary Judgment.

//

//

//

## II.  PROCEDURAL BACKGROUND

On July 28, 2018, Plaintiff applied for disability insurance benefits and supplemental social security income, claiming disability beginning August 11, 2017. AR 16, 163.[1] The Social Security Administration denied Plaintiff's claim initially and on reconsideration. AR 118, 129. Plaintiff requested a hearing, which an Administrative Law Judge ("ALJ") held on December 19, 2019. AR 49–91, 135. The ALJ issued a decision finding Plaintiff not disabled. AR 16–30. The Appeals Counsel denied Plaintiff's request for review. AR 1–7. Plaintiff then filed this case. Dkt. No. 1.

## III.  SUMMARY OF ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 11, 2017. AR 18.

At step two, the ALJ found the following severe medically determinable impairments: degenerative disc disease of the lumbar spine; chronic cough; history of a staph infection; herpes simplex; constipation; visual impairment not otherwise specified; menopausal hot flashes; chronic fatigue syndrome; and acromioclavicular joint degenerative change of right shoulder. AR 19. The ALJ further found Plaintiff's status post left shoulder arthroscopy, adjustment with anxiety, and cognitive impairment were non-severe. AR 19.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled those in the Commissioner's Listing of Impairments. AR 21–22.

---

[1] "AR" refers to the Administrative Record lodged on June 21, 2021. Dkt. Nos. 9, 10. The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by the CM/ECF.

Before proceeding to step four, the ALJ determined Plaintiff had the physical residual functional capacity ("RFC") to perform light work:

> She is able to lift, carry, push and pull 20 pounds occasionally and up to 10 pounds frequently. She is capable of standing and/or walking six hours and sitting six hours in an eight-hour workday with normal breaks. She can occasionally push and pull with the right upper extremity. She can occasionally climb ramps and stairs, never climb ropes, ladders or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She should avoid concentrated exposure to extreme cold, extreme heat, vibrations, fumes, dusts, gases, odors, poor ventilation and other pulmonary irritants, as well as hazards including unprotected heights and dangerous moving machinery.

AR 22.

At step four, the ALJ found Plaintiff could perform her past relevant work. AR 28.

At step five, the ALJ found in the alternative that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 30. The ALJ concluded Plaintiff was not disabled. AR 30.

## IV.   STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether the ALJ applied the proper legal standards and whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012). It is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (citation and internal quotation omitted). "[I]f evidence exists to

support more than one rational interpretation, [the Court] must defer to the Commissioner's decision." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## V.   DISCUSSION

Plaintiff contends the ALJ committed two errors: (1) "fail[ing] to properly consider and evaluate the opinion of . . . Plaintiff's treating physician"; and (2) "reject[ing] [Plaintiff's] testimony concerning her subjective symptoms." Dkt. No. 14 at 2, 6. The Court addresses each in turn.

### A. Treating Physician's Opinions

Plaintiff first challenges the ALJ's rejection of Plaintiff's treating physician's opinions. Dkt. No. 14 at 2. Plaintiff claims the ALJ erred by setting out only conclusory reasons for his rejection, and "the medical evidence does in fact support" the treating physician's opinions. Dkt. No. 14 at 3–4.

#### *i.   Legal Standard*

Plaintiff filed her claim after March 27, 2017; therefore, the 2017 amendments governing medical opinions contained in 20 C.F.R. § 404.1520c apply. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022).[2] Under the 2017 amendments, the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . . medical sources." 20 C.F.R. § 404.1520c(a). Thus, the new regulations eliminate what was customarily known as the "treating source" or "treating physician" rule. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed.

---

[2] *Woods* resolves the parties' dispute over whether the "specific and legitimate" standard survives the 2017 amendments to the treating physician rule. *Compare* Dkt. No. 20 at 3 (Plaintiff arguing the March 27, 2017 changes do not eliminate the requirement to provide a specific and legitimate reason for rejecting a medical opinion), *with* Dkt. No. 19 at 15 (Defendant arguing a "heightened rationale to justify rejecting a treating or examining medical source's opinion is not compatible with these regulations.").

Reg. 5844-01 (Jan. 18, 2017) (codified at 20 C.F.R. pt. 404) ("[W]e are not retaining the treating source rule . . . for claims filed on or after March 27, 2017.").

The 2017 amendments require evaluation of the persuasiveness of medical opinions according to the following factors: supportability, consistency, relationship with the claimant, specialization, and other factors, such as the medical source's familiarity with other evidence and the disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c). In assessing medical opinions, ALJs must explain how they "considered the supportability and consistency factors" and "may, but are not required to, explain how [they] considered the [other] factors . . . as appropriate." *Id.* § 404.1520c(b)(2).

Under the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [the source's] medical opinion(s) . . . the more persuasive the medical opinions will be." *Id.* § 404.1520c(c)(1).

"Consistency" is the extent to which an opinion is consistent "with the evidence from other medical sources and nonmedical sources." *Id.* § 404.1520c(c)(2).

"For claims subject to the new regulations, . . . an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

Applying these standards, the Court finds the ALJ properly discounted the treating physician's opinions.

### ii. Dr. Kimberly Maxon's Opinions

Between October 30, 2013 and January 8, 2018, Plaintiff's primary care physician, Dr. Kimberly Maxon, prepared eight "Work Status Reports":

- October 30, 2013: Dr. Maxon diagnosed Plaintiff with a bacterial infection and "placed [Plaintiff] off work" for five days.

- August 10, 2016: without noting any diagnosis, condition, or other explanation, Dr. Maxon reported Plaintiff was "able to return to work at full capacity" that same day.

- December 12, 2016: Dr. Maxon diagnosed Plaintiff with a recurrent bacterial infection. Although she reported "[Plaintiff] was evaluated and deemed able to return to work at full capacity," Dr. Maxon "expect[ed] [Plaintiff] will need to be off 2–3 times per month for average duration of 2–4 days to care for chronic medical condition. 12/12/2016 through 12/12/2017."

- January 18, 2017: Dr. Maxon reported Plaintiff was "able to return to work at full capacity" that same day and referenced her December 12, 2016 Work Status Report.

- March 8, 2017: Dr. Maxon diagnosed Plaintiff with a bacterial infection and "placed [Plaintiff] off work" the preceding five days because of a "contagious illness."

- May 16, 2017: Dr. Maxon wrote Plaintiff "is placed off work from 5/16/2017 through 6/22/2017" but did not provide any diagnosis, condition, or reasons supporting the recommended restrictions.

- January 8, 2018: Dr. Maxon wrote Plaintiff "is placed off work from 1/8/2018 through 7/8/2018" but did not provide any diagnosis, condition, or reasons supporting the recommended restrictions.

- August 11, 2017: Dr. Maxon "recommend[ed] [Plaintiff] work no more than 4 hours per day, no more than 5 days per week, starting no earlier than 10 am. [Dr. Maxon] recommend[ed] no more than light physical activity/duties." Again, Dr. Maxon did not provide any diagnosis, condition, or reasons supporting this recommended restriction.

AR 289, 294–304.

The ALJ found Dr. Maxon's opinions that Plaintiff was "unable to work" and the "off work" orders "neither valuable nor persuasive" because they are "statements on issues reserved to the Commissioner." AR 27. The ALJ further found "the medical evidence . . . did not support [Dr. Maxon's] opinions," and Dr. Maxon "did not provide support for [her] opinion that [Plaintiff] cannot work more than four hours a day." AR 27.

The ALJ did not err by discounting Dr. Maxon's opinions. "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or

restrictions" in her ability to perform physical or mental work activities. 20 C.F.R. § 404.1513(a)(2). An ALJ need not analyze non-medical opinions on issues reserved to the Commissioner because they are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(3). "[T]he opinion that [the plaintiff] is unable to work is not a medical opinion, but is an opinion about an issue reserved for the Commissioner." *Martinez v. Astrue*, 261 F. App'x. 33, 35 (9th Cir. 2007). Dr. Maxon opined Plaintiff was unable to work full time without addressing her functional limitations. The ALJ, therefore, properly discounted Dr. Maxon's opinions as addressing an issue reserved to the Commissioner. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("[T]he ALJ could reasonably conclude" opinions of the plaintiff's "ability to perform in the workplace as 'limited' or 'fair' were not useful because they failed to specify [the plaintiff's] functional limits."); *Champagne v. Colvin*, 582 F. App'x 696, 697 (9th Cir. 2014) ("[Plaintiff's] contention that the ALJ disregarded his treaters' opinions about his limitations lacks merit, because none of the treating providers gave an opinion regarding his functional limitations.").

The ALJ also properly found Dr. Maxon's opinion that Plaintiff cannot work full-time unpersuasive because "she did not provide support for [it]." AR 27. None of Dr. Maxon's opinions regarding Plaintiff's inability to work assess her exertional limitations. She does not explain why or how Plaintiff's bacterial infection (which diagnosis predates the onset of Plaintiff's disability), or any other impairments prevent Plaintiff from working full time. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

Although Plaintiff contends the ALJ's rejection of Dr. Maxon's opinions were conclusory and contrary to the medical evidence, the ALJ explained why Plaintiff could perform light work. For example, the ALJ cited MRI scans, chest x-rays, physical therapy evaluations, and physical examinations revealing no significant abnormalities. AR 24–25 (citing AR 467, 492–93, 622–24, 633–35). The ALJ noted steroid injections and physical therapy improved Plaintiff's range of motion and complaints of pain. AR 25–26 (citing

AR 580, 1913). Moreover, the ALJ listed Plaintiff's impairments (i.e., lumbar spine pain, respiratory condition and chronic cough, visual impairment, constipation, menopausal hot flashes, hemorrhoids, bowel movement issues, herpes simplex, and recurring staph aureus infections), considered whether they rendered Plaintiff unable to work, and concluded they did not.  AR 24–27.

In sum, the Court finds the ALJ's discounting of Dr. Maxon's opinion was consistent with the law and supported by substantial evidence in the record. *See Woods*, 32 F.4th at 793; *Jacqueline D. v. Comm'r of Soc. Sec.*, No. 20-cv-0365-TOR, 2021 WL 4083408, at *7 (E.D. Wash. Sept. 8, 2021) ("The ALJ's conclusion that [the physician's] opinion is unpersuasive is supported by substantial evidence and is consistent with Ninth Circuit law that a medical opinion may be rejected by the ALJ if it is brief, conclusory, or inadequately supported.") (citing *Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1228 (9th Cir. 2009)).

### B. Plaintiff's Testimony

Plaintiff also argues the ALJ "improperly rejected [Plaintiff's] testimony concerning her subjective symptoms by failing to offer any specific, clear and convincing reasons supported by substantial evidence in the record." Dkt. No. 14-1 at 6. The Court finds the ALJ's analysis met the applicable legal standards.

In evaluating a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Id.* (internal quotation omitted); *see also Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant

not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

In her August 14, 2018 and December 10, 2018 Disability Reports, Plaintiff reported:

- "I began to have problems around the age of 14 . . . I am no longer able to teach without excessive modification and absences. I am so susceptible to serious fatigue and black outs and illness that it has become impossible for me to work in my classroom closely with my students."

- "I get sick at the drop of a hat. . . . I continue to have many sick days which include fever, lightheartedness, black outs, serious bathroom issues, serious pain and fatigue. . . . I can no longer . . . work through illness, pain and fatigue as I used to."

- "[M]y vision has become impaired to the extent that I have been advised not to drive."

- "I am continually fatigued, I do not know from day to day how sick I will be. . . . My condition will never get better. I am not able to work or meet any sort of deadlines."

- "I become wiped out after simple tasks like laundry, showers, or shopping."

AR 193, 195, 202.

Plaintiff testified similarly at the December 19, 2019 hearing:

- "I was getting sick all the time."

- "[I cannot do] [p]retty much anything because I'm not able to keep a schedule. I don't really know like from hour to hour how I'm gonna feel, and it became really difficult for me cognitively and physically to keep doing that."

- "[M]y day in general consists of trying to get up, which takes me like an hour or two hours to kind of center myself and take my medicine and be able to function. I usually do – I usually don't have anything scheduled all day, except if I

- have doctor's appointments. . . . I'm not supposed to drive . . . ."

- "[Dr. Maxon] said that I could work between the hours of 10:00 and 2:00 . . . because of what I was saying about getting up and being able to strongly function, and in the afternoons, I'm just completely wiped out. And I can't, I'm not able to do any of the things I used to do. Laundry is like a big deal for me."

- "I do a lot of word searching . . . ."

- "At some point I [was treated by a neurologist]. I don't remember when."

- "I have inability to sleep. I have so much pain, widespread pain . . . ."

- "I was crying all the time. . . . I couldn't really have a conversation about not being able to teach . . . ."

- "This is like . . . having . . . metal running through you instead of blood where . . . you just don't even wanna move."

- "[I]t's very difficult to teach when you're constantly stopping and coughing . . . ."

- "I'm not supposed to drive . . . . My retinas have holes . . . like a blind hole. . . . It's gotten a little scary."

- "I've gone to the grocery store with my husband and gotten lost. The last time I tried to drive, I got lost. I didn't know where I was, I didn't know where I was going, I didn't know what I was doing."

AR 62–84.

The ALJ found Plaintiff suffered from medically determinable impairments that "could reasonably be expected to cause the alleged symptoms." AR 23; *accord Vasquesz*, 572 F.3d at 591 (finding ALJ "satisfied the first prong of the ALJ's inquiry regarding the credibility of [plaintiff's] complaints" where the "ALJ acknowledged that [plaintiff's] injuries could reasonably be expected to produce *some* of the pain and other symptoms

alleged") (internal quotation marks omitted). The ALJ found Plaintiff's statements not fully credible, however, because her "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . ." AR 23. Specifically, the ALJ found Plaintiff's "statements about the intensity, persistence, and limiting effects of . . . her symptoms" were inconsistent with: (1) Plaintiff's pre-onset date conduct; (2) her post-onset daily activities; (3) the lack of ongoing treatment; and (4) the objective medical evidence. AR 23–24. The ALJ's reasoning is clear and convincing and supported by substantial evidence.

Although Plaintiff argues the ALJ erred by considering pre-onset date evidence, Plaintiff herself testified about pre-onset limitations. *See, e.g.*, AR 78, 193. As the ALJ noted, Plaintiff testified that "it was difficult for her physically and mentally to continue with her prior job [and] in 2016/2017, she used many sick days at her prior job." AR 23. The ALJ found this testimony contradicted "notes in December 2016 show[ing] [Plaintiff] was traveling to Costa Rica" and "in March 2017 . . . [when] she reported she walked every day and kept up with her exercise program." AR 23. Similarly, the ALJ noted Plaintiff "alleged a host of problems that have occurred since childhood," but she "worked with these impairments until 2017." AR 23. These inconsistencies are a valid basis to discount Plaintiff's testimony. *See Crosby v. Comm'r of Soc. Sec. Admin.*, 489 F. App'x. 166, 168 (9th Cir. 2012) (upholding credibility determination because plaintiff's testimony that he suffered debilitating symptoms was inconsistent "with his work history showing that his longstanding conditions did not preclude work in the past"); *Hutton v. Comm'r of Soc. Sec.*, No. 15-cv-2002-KJN, 2017 WL 68261, at *6 (E.D. Cal. Jan. 6, 2017) (affirming the ALJ's credibility determination where "the ALJ noted that while plaintiff incurred his brain injury in 1983, that condition had not prevented him from working consistently between 1993 and [his alleged onset date in] 2011"); *cf. Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding ALJ properly inferred from plaintiff's ability to travel that plaintiff was not as limited as claimed). Accordingly, the ALJ did not err in considering Plaintiff's pre-onset testimony and conduct.

The ALJ also discounted Plaintiff's testimony about her post-onset limitations because her reported daily activities "were inconsistent with allegations of disabling conditions and pain." AR 23. The ALJ rejected Plaintiff's testimony (e.g., she has difficulty getting up in the morning and paying bills; she cannot do any of the things she used to do such as laundry, or drive (AR 62–84)) because in two medical visit notes from February 23, 2018 and October 4, 2019, Plaintiff "reported she managed her own medications, still drove and did not get lost, paid bills and did the cooking," and "exercised 140 minutes a week at . . . moderate to strenuous levels." AR 23 (citing AR 430), *see also* AR 2528. The ALJ properly relied on this evidence to reject Plaintiff's subjective symptom testimony. *See Batson*, 359 F.3d at 1196 (upholding ALJ decision finding plaintiff's "own testimony about his activities of daily living" contradictory to his "account of symptoms": "[Plaintiff] claimed that he could not return to work because of pain, yet he also testified that he tends to his animals, walks outdoors, goes out for coffee, and visits with neighbors."); *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1220 (D. Or. 2015) ("Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony.").[3]

Finally, the ALJ rejected Plaintiff's allegation she suffered from a neurological condition and her subjective complaints of cognitive impairments (e.g., black outs, inability to keep a schedule, getting lost) because: (1) "the records showed no ongoing treatment with a neurologist"; and (2) a neuropsychological evaluation showed Plaintiff "demonstrated overall intellectual functioning in the average range." AR 23–24 (citing AR 704). Indeed, the medical record Plaintiff's overall performance "within each domain

---

[3] Because these are on valid post-onset reasons for discrediting Plaintiff's testimony, any error by the ALJ in considering Plaintiff's pre-onset date conduct would, therefore, be harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (holding an invalid reason among valid reasons to discount a claimant's credibility was at most harmless error).

[verbal, visual, working memory, and cognitive efficiency and speed skill] was in the average range" with no predictors of Alzheimer's disease or neurodegenerative diseases. AR 704, 708.[4] These are also valid bases for rejecting Plaintiff's subjective testimony. *See Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("[I]f a claimant complains about disabling pain but fails to seek treatment, . . . an ALJ may use such failure as a basis for finding the complaints unjustified or exaggerated."); *see also* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of [the claimant's] symptoms and the effect those symptoms, such as pain, may have on [the claimant's] ability to work.").

In sum, the ALJ provided clear and convincing reasons to discount Plaintiff's subjective pain testimony.

### VI. CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) denying Plaintiff's Motion for Summary Judgment (Dkt. No. 14); and (3) granting Defendant's Motion for Summary Judgment (Dkt. No. 19).

**IT IS ORDERED** that on or before **June 10, 2022**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

//
//
//
//

---

[4] Although Plaintiff received a psychological screening on May 23, 2018, the record contains no evidence of any ongoing treatment with a neurologist.

**IT IS FURTHER ORDERED** that any reply to the objections must be filed with the Court and served on all parties on or before **June 17, 2022**.

Dated: May 26, 2022

_____
Honorable Daniel E. Butcher
United States Magistrate Judge